***********
The Full Commission reviewed the prior Decision and Order, based upon the record of the proceedings before Deputy Commissioner Harris and the briefs before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Decision and Order. Accordingly, the Full Commission affirms, with modifications, the Decision and Order of Deputy Commissioner Harris.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On January 2, 2008, plaintiff was an inmate at Lanesboro Correctional Institution. *Page 2 
2. On the morning of January 2, 2008, plaintiff's cell was searched, and he was found to be in possession of several items of contraband, including a "motor" for tattooing, a bottle of ink, and two bare razor blades. Also confiscated were over 2000 pen-and-ink drawings that plaintiff had made during his incarceration.
3. During the day on January 2, 2008, plaintiff was placed in administrative segregation pending the completion of the investigation. Several hours later, some of his personal property was brought to him, mostly photographs, letters, and legal materials. Plaintiff was presented with and executed the standard DC-160 property inventory form for these items. When plaintiff asked the officer what had happened to his drawings, he was told they were still being inventoried.
4. Officer Haywood, the officer in charge of STG ("security threat group," or gang) investigations at Lanesboro, went through the drawings and culled out four to six of them that he believed to be gang-related in nature, and thus deemed contraband. Officer Haywood gave the non-contraband drawings back to Sgt. Kinney after he was done with his investigation. He did not put them in storage.
5. Still later in the day on January 2, 2008, plaintiff asked Sgt. Kinney what had happened to his drawings and asked for a DC-160 form covering them. Sgt. Kinney responded that the drawings were "gone," began laughing and walked off.
6. On January 9, 2008, plaintiff pleaded guilty to two separate disciplinary offenses relating to possession of tattooing equipment and razor blades. Also, based on that four to six drawings that Officer Haywood had culled out of the seized materials, plaintiff was found guilty of engaging in gang-related activity. *Page 3 
7. The four to six drawings that prison officials found to support the charge of gang-related activity contained swastikas and SS bolt symbols, which prison officials associated with white supremacist groups. These four to six drawings were at the hearing on January 9, 2008, but the remainder of the drawings were not.
8. The remainder of the drawings, which were the vast majority of the over 2000 drawings seized, were not used as the basis for any disciplinary charges. These drawings contained many different themes, many being drawn in the "tribal" or "flash" styles.
9. On February 9, 2008, plaintiff filed a grievance seeking to have his drawings returned. After he filed the grievance, Officer Haywood came to plaintiff's cell to obtain an address to which his property could be sent and told plaintiff that the drawings had been turned over to Sgt. Kinney for mailing. Plaintiff asked to see his drawings first, and he was taken to see the unit manager, who told plaintiff that he could not see the drawings. Plaintiff provided his mother's mailing address, but the drawings were never sent to her. Officer Haywood did not know whether the drawings were ever mailed.
10. At times after that, Sgt. Kinney told plaintiff that he had personally destroyed all of plaintiff's drawings. Other times, Sgt. Kinney told plaintiff that he was joking, and that he had not destroyed the drawings because he was not allowed to do so.
11. Plaintiff was incarcerated in 2001. Prior to his incarceration, plaintiff was a professional tattoo artist and T-shirt designer, and he continued drawing after he was incarcerated. The more than 2000 drawings that were confiscated from him on January 2, 2008, were a large part of his body of work that he had done while in prison since 2001. Plaintiff had made many of the drawings as ideas for tattoo or T-shirt designs, posters, framed artwork, and cards. *Page 4 
12. In the weeks and months after January 2, 2008, plaintiff became very angry about having his drawings taken from him, and he had four formal sessions with the prison psychologist, Dr. Brandhorst.
13. Dr. Brandhorst first saw plaintiff on January 11, 2008, when he was asked to do a mental health screening because plaintiff was making suicidal threats. Dr. Brandhorst also saw plaintiff for crisis interventions on February 15, 2008; April 4, 2008, and September 29, 2008. The four formal sessions all dealt with plaintiff's frustration over his missing drawings. Dr. Brandhorst also made informal visits to plaintiff during his rounds. Dr. Brandhorst did not make any diagnosis of plaintiff's condition, but he confirmed that plaintiff was "very angry" about his missing drawings.
14. Dr. Brandhorst informally investigated, between February and April 2008, to try to determine the disposition of the drawings. He corresponded with Lt. Gibson, Sgt. Kinney, Unit Manager Steele, and Assistant Superintendant King. Steele told Dr. Brandhorst that the allegedly gang-related drawings had been destroyed, but he did not know what had happened to all the other drawings. Lt. Gibson told Dr. Brandhorst that the non-gang-related drawings were considered "neutral." No one knew what had happened to the "neutral" drawings, and, as he testified, Dr. Brandhorst "got the runaround" from these prison officials and "never got a straight answer." Dr. Brandhorst was unable to ascertain whether the drawings had been put in storage, had been destroyed, or otherwise.
15. On April 21, 2008, Sgt. Kinney represented in a grievance document that all non-"nuisance" contraband that was seized in the January 2, 2008, cell search had been put in a cardboard box and locked in a locker, and that "the only drawings that were taken were those *Page 5 
that appeared to be used as tattoo designs (flash)." Sgt. Kinney also represented that these items were sent to plaintiff's home.
16. As of the hearing, plaintiff's drawings still had not been returned to him, and defendant's officials did not know where they were.
17. This entire episode chilled plaintiff's enthusiasm for drawing, and he did not pick it back up until about July 2008. Prior to this episode, plaintiff was drawing about 10 to 15 hours per day.
18. Plaintiff's projected release date is March 2025. He had intended to use the drawings that were confiscated as designs in a T-shirt business he wants to start after his release under the name "Lizardo." Plaintiff regards his drawing and business planning as an effective form of self-rehabilitation. Plaintiff had already run a T-shirt business for about two years prior to his incarceration in 2001.
19. Officer Maxey confirmed that, after the investigation into plaintiff's alleged gang activity was finished, plaintiff should have received a DC-160 inventory form for all of his drawings, whether they were regarded as contraband or not. Officer Haywood confirmed that plaintiff should have been given the opportunity to have the non-threat contraband mailed home.
20. As plaintiff testified it is difficult to place a monetary value on the drawings that have gone missing. The drawings plaintiff makes are fairly intricate, and it is not possible for him to replicate much of what has gone missing.
 ***********
Based upon the foregoing findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW *Page 6 
1. N.C. Gen. Stat. § 143-291(a) confers the North Carolina Industrial Commission with jurisdiction to hear tort claims against departments, institutions and agencies of the state, including defendant. Id.
2. Under the provisions of the Tort Claims Act, negligence is determined by the same rules applicable to private parties.Bolkhir v. N.C. State Univ., 321 N.C. 706 (1988).
3. Defendant, through its officers, including Sgt. Kinney, had a duty to plaintiff to use reasonable care to protect his non-contraband drawings from loss and/or destruction while such property was in defendant's custody and control. Whether the non-contraband drawings were lost or destroyed as contraband, such conduct was negligent. Defendant has not even provided plaintiff with a Form DC-160 inventory of the non-contraband drawings, much less accounted for their whereabouts. N.C. Gen. Stat. § 143-291.
4. Defendant, through the conduct of its officers, including Sgt. Kinney, breached its duty of reasonable care by allowing plaintiff's drawings to be lost and/or destroyed while they were in defendant's custody and control. N.C. Gen. Stat. § 143-291.
5. The loss and/or destruction of plaintiff's drawings was actually and proximately caused by defendant's negligence. N.C. Gen. Stat. § 143-291.
6. Plaintiff sustained monetary damages because of the loss and/or destruction of his drawings. He has also suffered significant emotional distress directly attributable to the loss and/or destruction of his drawings. A sum of $200.00 is a reasonable amount to compensate Plaintiff for his damages. N.C. Gen. Stat. § 143-291 et seq.
7. Plaintiff is entitled to receive the sum of $200.00 from defendant as monetary damages in this claim. N.C. Gen. Stat. § 143-291.
 *********** *Page 7 
Based upon the foregoing findings of fact and conclusion of law, the Full Commission enters the following:
 ORDER
1. Defendant SHALL pay to plaintiff the sum of $200.00 as monetary damages.
2. Defendant shall pay the costs.
This the 8th day of April, 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ PAMELA T. YOUNG CHAIR *Page 1